# In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 11-2500, 11-2533

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA., *et al.*,

*Plaintiffs-Appellees/*
*Cross-Appellants,*

*v.*

AMERICAN MOTORISTS INSURANCE COMPANY,

*Defendant-Appellant/*
*Cross-Appellee.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 3179—**Elaine E. Bucklo**, *Judge.*

ARGUED JANUARY 15, 2013—DECIDED FEBRUARY 13, 2013

Before POSNER, WOOD, and TINDER, *Circuit Judges.*

POSNER, *Circuit Judge.* This insurance case—a diversity suit governed by Illinois law by default, neither party having argued choice of law, *Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009)—arose out of an

accident at the John Hancock Center in downtown Chicago. Dissatisfied with the district court's judgment, both sides appeal.

The building is owned and managed, respectively, by two affiliated companies, SRI Michigan Avenue Venture, LLC and Shorenstein Realty Services, L.P. But six other affiliates of these two Shorenstein entities are involved in this case as well, and we'll generally refer to all eight, collectively, as "Shorenstein."

Shorenstein, and one of its insurers, National Union Fire Insurance Company, sought indemnity from another insurance company, American Motorists Insurance Company (AMICO). Shorenstein prevailed with respect to one of its entities, SRI Michigan Avenue Venture, LLC, see *U.S. Fidelity & Guaranty Co. v. Shorenstein Realty Services, L.P.*, 837 F. Supp. 2d 806, 817 (N.D. Ill. 2011), and was awarded $959,866.02 by the district court, but wants more. AMICO, the defendant, contends that the award should be zero.

We needn't discuss National Union separately (although it will make a cameo appearance later). It paid Shorenstein's settlement costs after AMICO refused to do so, and as a result became subrogated to the rights of the Shorenstein entities entitled to indemnification by AMICO and so will be reimbursed for the amount of that indemnification. *Home Ins. Co. v. Cincinnati Ins. Co.*, 821 N.E.2d 269, 276, 280 (Ill. 2004); *John Burns Construction Co. v. Indiana Ins. Co.*, 727 N.E.2d 211, 214-15 (Ill. 2000). It, rather than Shorenstein, is the real party in

interest, but because the dispute revolves around the Shorenstein entities and their interrelations, it is simpler to treat Shorenstein as the plaintiff.

Shorenstein had hired an architectural firm named McGinnis Chen Associates, LLP ("MCA" for short) to design and oversee a renovation of windows and exterior walls of the Hancock Center. MCA hired a general contractor to execute the project. The accident occurred in 2002 when a scaffold being used in the project fell from the building's 42nd floor in a high wind and killed three people in cars, and severely injured several others, on the street below. Multiple tort suits ensued that named, among other defendants, MCA and five Shorenstein affiliates—SRI Michigan Avenue Venture, LLC; Shorenstein Realty Services, L.P.; Shorenstein Management, Inc.; SRI Michigan Avenue Management, Inc.; and Shorenstein Co., L.P. The Shorenstein entities settled with the tort plaintiffs in 2006 for a total of $8.7 million. Three additional Shorenstein affiliates that had not been named in any of the tort suits obtained releases in the settlement: Shorenstein Company LLC; Shorenstein Properties LLC; and Shorenstein Michigan Avenue Venture LLC. The roles of the Shorenstein affiliates other than the first two—the owner and manager—in relation to the Hancock building in general or to the accident in particular are unclear.

MCA's contract with Shorenstein had required MCA to obtain liability insurance, with specified minimum limits, covering the "Owner [of the Hancock building],

Owner's Agent, Shorenstein Company, L.P., and any other party specified by Owner at any time and from time to time as additional insureds with respect to the Work under the Contract." MCA obtained the required insurance policy from AMICO. It covers "any person or organization to whom [MCA is] obligated by virtue of a written contract . . . to provide such insurance." Shorenstein Co., L.P. is named in MCA's contract and is therefore covered by the policy. In apportioning settlement proceeds the district judge omitted it on the ground that it was not a defendant in the tort suits and therefore hadn't contributed to the settlement. That was a mistake; it was named as a defendant in one of them (*Bohstedt v. Shorenstein Management, Inc.*). That's what makes a total of five Shorenstein defendants rather than the district judge's four.

There is a dispute over whether AMICO's policy insured two of the other Shorenstein entities as respectively "Owner" and "Owner's Agent" in MCA's contract. The contract names as one of the building's owners SRI Michigan Avenue Venture, LLC. But that name doesn't appear in the settlement agreement, which instead refers instead to an apparently nonexistent entity called "SRI Michigan Avenue Venture, LLP." That is an obvious and trivial mistake, and we ignore it, as did the district judge.

The other coverage dispute is over Shorenstein Realty Services, L.P., the building's manager, which Shorenstein claims and AMICO denies was the "Owner's Agent" and therefore an additional insured. The dis-

trict judge thought Shorenstein had forfeited this claim by not presenting evidence or case law in support of it. We think there was enough evidence; and there is no reason to cite case law on a factual question.

MCA's contract with Shorenstein does not mention an owner's agent. But under the heading "Project Team" it names John Kapp as the "Owner's Designated Representative." And directly under his name is printed "Shorenstein Realty Services, Inc.," which doubtless refers to Shorenstein Realty Services, L.P., the building's manager. MCA's contract with Shorenstein states that "capitalized terms not otherwise defined in this Agreement are used with the meanings supplied by the Project Manual," and the manual lists the owner as "SRI Michigan Avenue Venture, LLC, c/o *Owner's Agent Shorenstein Realty Services*" (emphasis added). That's good enough: Shorenstein Realty Services, L.P. was insured by AMICO as the "Owner's Agent" in the MCA contract.

This makes three Shorenstein entities insured by the AMICO policy: SRI Michigan Avenue Venture, LLC; Shorenstein Co., L.P.; and Shorenstein Realty Services, L.P. Yet all eight Shorenstein entities were parties to the settlement, though three hadn't even been sued in any of the tort cases. Only entities insured by AMICO can obtain indemnity from it, and so it's necessary to determine how much of the settlement was attributable to parties insured by AMICO.

Shorenstein argues that only the building's owner and manager were exposed to tort liability—the three

other Shorenstein entities named in those suits were superfluities—and therefore that only the owner and manager had contributed to the settlement of those suits. That is, it denied that the others had had any effect on the size of the settlement. It wants to exclude affiliates not insured by AMICO because their inclusion would reduce the amount of the settlement allocated to the insured parties and thus the reimbursement that could be obtained under AMICO's insurance policy. *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 367 (7th Cir. 1990). If an uninsured defendant makes the settlement of a case larger than it would have been had the insured defendant been the only defendant, the excess should be allocated to the uninsured defendant and so the insurer will not be responsible for reimbursing the cost of the entire settlement. *Owens Corning v. National Union Fire Ins. Co.*, 257 F.3d 484, 491-93 (6th Cir. 2001).

In fact, as we just saw, not two but three of the Shorenstein entities were insured; it is on the premise that only two were that Shorenstein argues that only the owner and manager contributed to the settlement. The critical question, however, is whether the judge was right to rule that *all* the Shorenstein defendants, whether or not insured, should be deemed to have contributed equally to the settlement. Cf. *Federal Ins. Co. v. Binney & Smith, Inc.*, 913 N.E.2d 43, 57-58 (Ill. App. 2009); *Illinois Central R.R. v. Accident & Casualty Co.*, 739 N.E.2d 1049, 1061-62 (Ill. App. 2000).

The judge also ruled that the Shorenstein entities that had not been named as defendants should be deemed

to have contributed nothing to the settlement. That ruling is clearly correct, and not challenged by AMICO. The plaintiffs had indicated in the settlement negotiations that Shorenstein could include in the settlement agreement a release of any entities it chose; the plaintiffs were indifferent. So Shorenstein inserted releases for all eight "in an attempt to be 'as overly inclusive as possible.'" *U.S. Fidelity & Guaranty Co. v. Shorenstein Realty Services, L.P.*, *supra*, 837 F. Supp. 2d at 812.

Shorenstein's challenge to the judge's ruling that defendants not insured by AMICO should be deemed to have contributed to the size of the settlement is weakly supported. The settlement agreement failed to apportion liability among the settling defendants, and in the present litigation Shorenstein failed to depose the tort plaintiffs' lawyers to find out how they thought the presence of these other entities had contributed to the size of the settlement. Shorenstein argues that the Shorenstein defendants other than the owner and manager had (because they had nothing to do with the accident) no liability to the tort plaintiffs and so couldn't have affected the size of the settlement. That's a non sequitur. Defendants often settle—paying good money—a case they think has no merit, that is merely a nuisance suit. If there was no basis for joining the other entities as defendants, Shorenstein should have moved to dismiss them as tort defendants before settling the tort suit, in order to establish their irrelevance to the amount of the settlement.

We also reject Shorenstein's argument that it should be entitled to prejudgment interest (a claim denied by

the district court). Illinois law allows such interest only when the award to the plaintiff was readily calculable when the suit was brought. *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 355 (7th Cir. 2010) (Illinois law). Given the uncertainty about which of the Shorenstein entities other than the building's owner and manager contributed to the settlement and which were covered by AMICO's insurance policy, we agree with the district judge that AMICO's share of the settlement cost was not readily calculable prior to judgment and that therefore Shorenstein wasn't entitled to prejudgment interest.

We return to AMICO's appeal to resolve the two other issues that it raises. The first is whether Shorenstein's claim is barred by the insurance policy's exclusion of coverage for personal or bodily injury "due to rendering or failure to render any professional service" by an insured. The services that MCA, the architect on the project, rendered were professional services. But the Shorenstein defendants did not render professional services, and the policy states that the insurance it provides applies "separately to each insured against whom claim is made or 'suit' is brought." See *Patrick Engineering, Inc. v. Old Republic General Ins. Co.*, 973 N.E.2d 1036, 1039-44 (Ill. App. 2012); *St. Katherine Ins. Co. Ltd. v. Insurance Co. of North America, Inc.*, 11 F.3d 707, 710 (7th Cir. 1993) (Illinois law); *U.S. Fidelity & Guaranty Co. v. Globe Indemnity Co.*, 327 N.E.2d 321, 322-23 (Ill. 1975).

Second, AMICO argues that Shorenstein gave up its right to indemnity by AMICO when it asked National

Union, its other insurer, to indemnify it for its loss result-
ing from the accident. The "targeted tender" doctrine
of insurance law allows an insured with multiple
insurers to pick one to seek indemnity from and thus
leave the others in peace. *Kajima Construction Services, Inc.
v. St. Paul Fire & Marine Ins. Co.*, 879 N.E.2d 305, 309
(Ill. 2007); *John Burns Construction Co. v. Indiana Ins. Co.*,
*supra*, 727 N.E.2d at 215; *North River Ins. Co. v. Grinnell
Mutual Reinsurance Co.*, 860 N.E.2d 460, 470-71 (Ill. App.
2006). Commonly (and in this case) the "targeted" insurer
is not the insured's principal insurer, as the insured
would especially not want *that* insurer to raise its premi-
ums to punish the insured for having submitted
a big claim. National Union was one of Shorenstein's
principal insurers and so Shorenstein decided to go
after AMICO to the extent that it had insured the
Shorenstein defendants. AMICO argues that Shorenstein
withdrew the tender. It bases this argument mainly on
Shorenstein's efforts to make sure that if AMICO didn't
indemnify it National Union would. AMICO after all
was denying that it had any duty to indemnify
Shorenstein, so it was prudent for Shorenstein to keep
National Union in its sights as a back-up insurer. Only
when AMICO denied that it had any duty to indemnify
Shorenstein did the latter turn, though only tentatively, to
its other insurer—National Union—to cover settle-
ment costs. It did so knowing that National Union
would be subrogated to Shorenstein's rights against
AMICO were the latter held to have improperly
refused coverage of Shorenstein settlement of the
tort claims; and if National Union were thus made

whole, it presumably would not punish Shorenstein by increasing its premium.

AMICO points to a letter by Shorenstein to AIG, the parent of National Union, that suggests that Shorenstein was counting on National Union for indemnity. But the letter was sent in the wake of AMICO's renouncing any obligation to indemnify Shorenstein. At that point, turning to National Union for indemnification was the rational course for Shorenstein to pursue even if it preferred collecting from AMICO. That was not a renunciation of the tender to the preferred (the "targeted") insurer, as in *Alcan United, Inc. v. West Bend Mutual Ins. Co.*, 707 N.E.2d 687, 694-95 (Ill. App. 1999); see also *Kajima Construction Services, Inc. v. St. Paul Fire & Marine Ins. Co.*, *supra*, 879 N.E.2d at 309, 310-11, but a prudent back-up measure.

We commend the district judge's patient handling of this complicated case made more so by the lawyers' deep immersion in the jargon and esoterica of insurance law. But the judge erred in dividing the settlement among four Shorenstein entities rather than five (for she should have included Shorenstein Co., L.P.), and in ruling that Shorenstein Realty Services, L.P. was not covered by AMICO's policy. The judge will therefore have to recompute the amount of reimbursement to which Shorenstein (and hence, by subrogation, National Union) is entitled from AMICO.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.

2-13-13