In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 12-2405, 12-2485

ATLANTIC CASUALTY INSURANCE COMPANY,

*Plaintiff-Appellee*,

*v.*

PASZKO MASONRY, INC. and ROBERT RYBALTOWSKI,

*Defendants*,

and

CHICAGO MASONRY CONSTRUCTION, INC.;
PRINCE CONTRACTORS, INC.; and 4929 FOREST, LLC,

*Defendants-Appellants*.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 7452—**Joan B. Gottschall**, *Judge*.

ARGUED APRIL 12, 2013—DECIDED JUNE 7, 2013

Before BAUER, POSNER, and FLAUM, *Circuit Judges*.

POSNER, *Circuit Judge*. In this diversity suit governed by
Illinois law, an insurance company seeks a declaratory

judgment that it has no duty to defend any of the four defendant companies listed in the caption (Prince, Paszko, Chicago Masonry, and Forest) against Robert Rybaltowski's personal injury suit against those companies. The district court granted summary judgment in favor of Atlantic on the ground that Rybaltowski was a contractor and that therefore the insurance policy excludes coverage of the companies' liability to him.

Atlantic issued the insurance policy to only one of the companies, Paszko (against which a default judgment was entered both in the personal injury suit and in this suit, which is why it isn't an appellant). The three other defendant companies, however, argued in the district court that the policy covers them as well, as additional insureds. See *National Union Fire Ins. Co. v. American Motorists Ins. Co.*, 707 F.3d 797, 800-01 (7th Cir. 2013) (Illinois law). The district judge, agreeing with Atlantic that Rybaltowski's suit was within the exclusion, found it unnecessary to decide whether the companies were additional insureds. The parties do not mention the issue in this court, but it may become critical if we remand.

The defendant companies worked on the construction of an apartment building at 4929 Forest Avenue in Downers Grove, Illinois. The building was completed in 2009; the accident giving rise to this suit occurred during construction in 2007. Rybaltowski was an employee of a waterproofing company named Raincoat Solutions, which had submitted a bid to Prince, the general contractor, to perform caulking (sealing joints or gaps). Raincoat would thus be a subcontractor of Prince

if Prince accepted its bid. Prince accepted it—subject, however, to approving in advance the color of the caulking material that Raincoat would use and satisfying itself, also in advance, that the caulker was competent to do the work. So Raincoat's boss brought Rybaltowski to the project site to demonstrate how he would do the caulking. Raincoat did not expect to be paid for the demonstration, which involved caulking a few windows. After the demonstration but before Rybaltowski left the site, a beam supporting masonry equipment fell on him, causing injuries for which he sought redress in the tort suit. A half hour or so after the accident Raincoat and Prince signed the subcontract.

The insurance policy that Atlantic had issued to Paszko was a Commercial General Liability Insurance policy. Atlantic's version of the policy contained an exclusion, captioned "Injury to Employees, Contractors and Employees of Contractors," from coverage for "'bodily injury' to any 'contractor' arising out of or in the course of the rendering or performing services of any kind or nature whatsoever by such 'contractor' for which any insured may become liable in any capacity." The exclusion stated that "'contractor' shall include but is not limited to any independent contractor or subcontractor of any insured, any general contractor, any developer, any property owner, any independent contractor or subcontractor of any general contractor, any independent contractor or subcontractor of any developer, any independent contractor or subcontractor of any property owner, and any and all persons working for and or providing services and or materials of any kind for these

persons or entities mentioned herein." So if when Rybaltowski was injured his employer, Raincoat, either was a subcontractor or was providing services of any kind to a contractor (namely Prince), within the meaning of the exclusion, Rybaltowski was a "contractor" as well, because he was working for Raincoat. Incidentally, Raincoat, not having been joined as a defendant in Rybaltowski's tort suit, does not claim to be an additional insured under Atlantic's policy.

The exclusion is poorly drafted. The term "contractor" is exemplified rather than clearly defined. The wording of the exclusion leaves uncertain whether Raincoat was a contractor simply because companies that engage in construction are called "contractors," or whether it did not become a "contractor" until it signed a contract with Prince or until it provided materials or services other than the demonstration of caulking, or whether the demonstration itself was a service provided by a contractor. The complaint in Rybaltowski's tort suit refers to Raincoat as a "contractor," but this has no significance for the interpretation of Atlantic's policy, to which Rybaltowski was a stranger. See *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1019 (Ill. 2010). The facts alleged in a complaint against an insured, charging a tort or other wrong, are critical to determining the insurer's duty to defend, *id*. at 1017, but the tort plaintiff has no authority to interpret the insurance contract. That's a matter for the court. *Id*. at 1016.

If Raincoat was "providing services . . . of any kind" to Prince (we assume that "of any kind" modifies services

as well as materials, a plausible reading to which neither party takes exception) when the accident occurred, Rybaltowski, who "work[ed]" for and provided services to Raincoat, was also a "contractor," and so the accident is not covered. Although the policy does not define the critical term "providing services . . . of any kind," one possible interpretation would involve comparing Raincoat to a theatrical employment agency. Suppose the producer of a play asks an agency to send 20 actors to him to audition for five parts. The producer wants that many auditioners in order to increase the likelihood of being able to hire five outstanding actors. There is a sense in which all 20, including the rejects, are "providing services" to the producer; they are facilitating his picking the best by providing a range of possibilities. Rybaltowski was auditioning by doing a free demonstration of caulking.

The intended meaning of "providing services" could be narrower, however; and courts interpret an ambiguous term in an insurance contract in favor of the insured. The reason is that "insureds want insurance against the vagaries of interpretation," *Great West Casualty Co. v. Mayorga*, 342 F.3d 816, 818 (7th Cir. 2003); see also *Stone Container Corp. v. Hartford Steam Boiler Inspection & Ins. Co.*, 165 F.3d 1157, 1161-62 (7th Cir. 1999), as well as against the risks clearly stated in the policy—especially since an insured has no realistic possibility of negotiating clarification of ambiguous policy language. *Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, 607 N.E.2d 1204, 1207 (Ill. 1992); see also *Payless Shoesource, Inc. v. Travelers*

*Cos., Inc.*, 585 F.3d 1366, 1372-73 (10th Cir. 2009); *Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 244 (Ind. 2000).

Ignoring the other defendant companies, to simplify analysis, we ask first whether the exclusion of coverage for injuries to "contractors" as understood by Atlantic to exclude coverage for liability to Rybaltowski would so limit Prince's coverage (assuming Prince is covered as an additional insured) as to make it implausible that anyone would want such a policy. That would be a reason to doubt Atlantic's interpretation.

Not that the interpretation would make the coverage provided by Atlantic's policy (whether to Paszko, the original purchaser of the policy, or to Prince or other contractors or subcontractors who claim to be covered by it) illusory. See *American Country Ins. Co. v. Cline*, 722 N.E.2d 755, 761-62 (Ill. App. 1999); *American Country Ins. Co. v. Kraemer Bros., Inc.*, 699 N.E.2d 1056, 1062 (Ill. App. 1998). The exclusion would still be inapplicable to a passerby, deliveryman, building inspector, police officer, garbage collector, or other person who might be injured at a construction site without being involved in the construction at the site. True, the vast majority of persons at such a site—and the persons most likely to be injured there—are construction workers, employed by contractors or subcontractors and thus "contractors" themselves within the meaning of the exclusion. But Prince did not need Atlantic's policy in order to protect itself against liability to those workers. It had bought its own Commercial General Liability policy, and its policy contains no contractor exclusion. Probably Prince

seeks coverage under Atlantic's policy rather than under its own only because its primary insurer might raise Prince's premiums should Prince require that insurer to defend or indemnify it. See *National Union Fire Ins. Co. v. American Motorists Ins. Co.*, *supra*, 707 F.3d at 802.

Prince could have obtained still more coverage by requiring each of its subcontractors to make it an additional insured under a policy that insured the subcontractor against liability to the subcontractor's employees. Because workers' compensation law protects a subcontractor from a tort suit by his own employees, though not the general contractor from a tort suit by those employees, the general contractor would be requiring the subcontractor to carry a form of insurance—insurance against tort liability to the subcontractor's own employees—that the subcontractor would not need or want. Still, such insurance often is required by construction contractors. 4 Philip L. Bruner and Patrick J. O'Connor, Jr., *Bruner and O'Connor on Construction Law* § 11:44, p. 67 (2012 Supp.); see, e.g., *National Fire Ins. v. Walsh Construction Co.*, 909 N.E.2d 285, 287-88 (Ill. App. 2009). Or Prince could have required indemnification by its subcontractors or prescribed specific safety precautions to reduce the liability risk from injuries to its subcontractors' employees, and might have needed additional coverage only for injuries to passersby or other visitors not engaged in construction.

These approaches would not have worked in the present case, because Prince had no contract with Raincoat in which to insert an "additional insured" clause or a requirement of indemnification or other provisions

for Prince's own protection. Prince may have been an additional insured under Paszko's policy, and Paszko was responsible for the toppling of the masonry equipment on the unfortunate Rybaltowski. But that's the policy that contains the contractor exclusion.

We don't understand the attraction of an insurance policy such as Atlantic's that contains such a broad exclusion; a Google search suggests that the exclusion is rare, and maybe it is confined to policies issued by Atlantic. Still, broad as it is, the exclusion does not render coverage illusory. Nor can we say that it can't be as broad as Atlantic believes because then no one would buy the policy. But we still must decide *how* broad it is. And resolving ambiguity as we must against the insurer, we conclude that it is not broad enough to embrace the accident to Rybaltowski.

The district court's contrary ruling was terse: "The language of the Exclusion is incredibly broad: 'providing materials and or services of any kind.' Raincoat Solutions' bid and mockup work fell within this expansive language. The court must conclude that Raincoat Solutions qualifies as a 'contractor' as set out in the policy." We don't know what the judge meant by "bid and mockup work." Submitting a bid is like applying for a job, and a job application is not usually thought a service to the prospective employer, though it is a provision of information and has value to the recipient, at least if the applicant for the job is worth consideration. Maybe in describing the bid as "work" or as a service the judge was picking up a suggestion by Atlantic that

Rybaltowski's caulking was not just a demonstra-
tion—that if satisfactory it would remain on the windows
he'd caulked. For the demonstration did not involve
caulking a mock-up, although that is the word the judge
used; it involved caulking actual windows of the build-
ing. But as far as appears, the caulking could easily have
been removed, and so was tentative until the contract was
signed, which happened after the accident.

The demonstration caulking *could* be thought the pro-
vision of a service, either because the caulking remained
on the windows (as it probably did, since Prince gave
the caulking subcontract to Raincoat, implying that
Rybaltowski's work was satisfactory), or because the
demonstration led to the signing of the contract and thus
to the subsequent provision by Raincoat of what unques-
tionably were construction services. Raincoat's internal
calculation of the price to include in its bid could also,
though more dubiously, be thought the provision of a
service, because it too led to the bid that led to the demon-
stration caulking and after the subcontract was signed
to the contractual caulking.

Also plausible, however, is the alternative interpreta-
tion that services are not provided until the contractor
(with or without a signed contract, because a provider of
services is a "contractor" within the meaning of the
exclusion regardless of whether he has a contract) begins
to do compensated work on the project. It is as plausible
as the interpretation adopted by the district judge or the
one actually preferred by Atlantic—that a "contractor" is
anyone in the construction business, whether or not he

is rendering a construction service when the injury occurs. It does seem a little odd to treat a construction worker as if he were a passerby just because he was demonstrating a construction service rather than performing a contracted-for service. But if this is a loophole in the wordy exclusion, Atlantic could have plugged it by excluding any and all construction workers from coverage, rather than contractors. The alternative interpretation—that Rybaltowski was not a contractor when he was injured—thus rules the case. And so Atlantic has a duty to defend the appellants if they are determined to be additional insureds.

The judgment is therefore reversed and the case remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.