# STATE OF MICHIGAN

# COURT OF APPEALS

ATLANTIC CASUALTY INSURANCE COMPANY,

Plaintiff-Appellee,

v

GARY GUSTAFSON,

Defendant-Appellant,

and

ANDREW AHO,

Defendant.

FOR PUBLICATION
May 26, 2016
9:15 a.m.

No. 325739
Ontonagon Circuit Court
LC No. 2014-000055-CK

Before: GLEICHER, P.J., and SAWYER and M. J. KELLY, JJ.

SAWYER, J.

In this declaratory judgment action, the parties filed cross-motions for summary disposition, with the trial court granting plaintiff's motion and denying defendant's motion. Defendant Gustafson now appeals and we reverse and remand.

The facts are not in dispute. Defendant Gustafson (hereinafter "defendant") operates a business known as Gustafson Excavating and Septic Systems. He was hired by defendant Aho (hereinafter "the homeowner") to perform landscaping and drainage work around a pond on the homeowner's residential property. Defendant was insured under a commercial general liability policy issued by plaintiff.

The homeowner was watching defendant's employee clearing brush near the pond with a brushhog. A piece of debris flew from the brushhog, striking the homeowner in the eye, causing injury. The homeowner brought suit against defendant. Defendant contacted his insurance agent, who assured defendant that this type of incident was covered by the insurance policy. But, upon review by plaintiff, plaintiff determined that they had no duty to defend or indemnify because the loss came within a policy exclusion. Plaintiff then brought this action seeking declaratory relief.

The exclusion at issue is entitled "Exclusion of Injury to Employees, Contractors and Employees of Contractors" and provides as follows:

This insurance does not apply to:

* * *

(ii) "bodily injury" to any "contractor" for which any insured may become liable in any capacity:

* * *

As used in this endorsement, "contractor" shall include but is not limited to any independent contractor or subcontractor of any insured, any general contractor, any developer, *any property owner,* any independent contractor or subcontractor of any general contractor, any independent contractor or subcontractor of any general developer, any independent contractor or subcontractor of any property owner and any and all persons providing services or materials of any kind for these persons or entities mentioned herein.

In short, plaintiff takes the position that, because the homeowner is "any property owner," he comes within the definition of "contractor" and, therefore, comes within the exclusion clause for contractors. The trial court agreed, but we do not.

First, the relevant standard of review was summarized by our Supreme Court in *Wilkie v Auto-Owners Ins Co*:[1]

The proper interpretation of a contract is a question of law, which this Court reviews de novo. *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 408; 646 NW2d 170 (2002). The same standard applies to the question of whether an ambiguity exists in an insurance contract. *Farm Bureau Mut Ins Co v Nikkel*, 460 Mich 558, 563; 596 NW2d 915 (1999). Accordingly, we examine the language in the contract, giving it its ordinary and plain meaning if such would be apparent to a reader of the instrument.

The interpretation of this particular insurance contract clause appears to be a question of first impression in this state, though it has been addressed elsewhere. Defendant relies on two cases from other jurisdictions. The first, an unpublished decision of the Connecticut Superior Court, *Turano v Pellaton*,[2] is the closer of the two factually. In that case, the plaintiff had hired one of the defendants to do work in his basement. The plaintiff was injured when he fell going down the basement stairs because of a step that had been removed and not replaced, nor was he warned about the missing step. Our plaintiff in this case, Atlantic Casualty, also insured one of

---

[1] 469 Mich 41, 47; 664 NW2d 776 (2003).

[2] 2014 Conn Super Lexis 146.

the subcontractors in the *Turano* case. Atlantic Casualty denied coverage on the same basis that it is doing so in the case at bar: that because Turano was "any property owner," he came within the definition of "contractor" and, therefore, the same policy exclusion at issue here applied to exclude coverage in that case. The Connecticut court disagreed, concluding that the heading of "Exclusion of Injury to Employees, Contractors and Employees of Contractors" limited the language which follows to situations where the insured has employed a third party to provide services to the insured, not to customers/property owners.[3] Specifically, it noted that "this heading seems to envision situations involving employment or, more specifically, where the insured hires or employs a third party to perform services that assist the insured to perform jobs."[4]

The other case is a published decision of the Seventh Circuit authored by Judge Posner, *Atlantic Casualty Ins Co v Paszko Masonry, Inc.*[5] The facts in *Paszko* are somewhat different than in our case and, while plaintiff relied upon the same exclusionary clause in that case, a different portion of the exclusion was at issue. In the underlying lawsuit, the injured party, Robert Rybaltowski, brought an action against four companies, only one of whom, Paszko, was insured by plaintiff. The other three defendants argued that they were covered as well as additional insureds.[6] The various defendants worked on a construction project involving the construction of an apartment building. Rybaltowski worked for a waterproofing company, Raincoat Solutions, that had submitted a bid to the general contractor, Prince Contractors (one of the defendants claiming to be an additional insured), to perform caulking work. Prince accepted the bid, subject to its advance approval of the color of the caulk and of the competency of the caulker. Thus, Rybaltowski was sent by Raincoat to the job site to demonstrate his skill by caulking a few windows; Raincoat was not expected to be paid for this work. After completing the demonstrating, but while still at the job site, a beam fell and struck Rybaltowski. It was only afterwards that a contract was signed between Prince and Raincoat.[7]

Plaintiff denied coverage, relying upon the same exclusion at issue in our case, though the focus in *Paszko* is on the later reference to "providing services . . . of any kind" to Prince.[8] In

---

[3] *Slip op* at 10-11.

[4] *Id.* at 10.

[5] 718 F3d 721 (CA 7, 2013). We note that plaintiff relies on an earlier, unreported case from the Northern District of Illinois, *Atlantic Casualty Ins Co v Alanis Development Corp* (No. 09 C 6657, filed January 25, 2011). While the fact situation in the district court case is closer to those in the case at bar, we place greater reliance on the more recent published decision of the Seventh Circuit.

[6] *Paszko*, 718 F3d at 722. The issue of whether they were additional insureds was unresolved in the trial court and was not an issue on appeal, though the court noted that it could be an issue on remand. *Id.*

[7] *Id.* at 722.

[8] *Id.* at 723.

his opinion, Judge Posner was very critical of the language used in the contract: "The exclusion is poorly drafted. The term 'contractor' is exemplified rather than clearly defined."[9]  The court also noted how broad and unusual the exclusionary clause was:[10]

> We don't understand the attraction of an insurance policy such as Atlantic's that contains such a broad exclusion; a Google search suggests that the exclusion is rare, and maybe it is confined to policies issued by Atlantic.  Still, broad as it is, the exclusion does not render coverage illusory.  Nor can we say that it can't be as broad as Atlantic believes because then no one would buy the policy.  But we still must decide *how* broad it is.  And resolving ambiguity as we must against the insurer, we conclude that it is not broad enough to embrace the accident to Rybaltowski.

This reference to whether the portion of the clause at issue in *Paszko* rendered the policy illusory is interesting.  The court had a few paragraphs earlier rejected such a conclusion because, even under plaintiff's broad reading, it would be inapplicable to passersby and others "who might be injured at a construction site without being involved in the construction."[11]  In our case, such a conclusion could not be so easily reached.  While the *Paszko* court could easily note any number of persons who would not fall into the category of persons who supply services or materials, and would be a "contractor" under plaintiff's argument for a broad definition in that case, it is not so easy in this case with the term "any property owner."  If viewed on its own, that term would include virtually everyone in the world; even the poorest person at least owns the clothes on his back, thus making him a "property owner" and, therefore, presumably a "contractor" under a broad reading of the statute.  Indeed, the trial court was able to reject the argument that the clause renders the policy illusory only after adopting plaintiff's more limited interpretation of "any property owner" as meaning the owner of the property upon which the work is being performed.

Perhaps this is why plaintiff rejects the argument that "any property owner" means literally that.  Plaintiff admits that this would be an absurd interpretation.  Plaintiff suggests that the only "reasonable" interpretation of the phrase would be that it means the owner of the real property upon which the insured is performing work.  While we agree that to interpret the phrase "any property owner" to mean anyone who owns any type of property, thus encompassing virtually the entire world (except perhaps for a newborn baby) and rendering the policy illusory, we fail to see how it leads us to plaintiff's more specific interpretation.  But more critical at this

---

[9] *Id.*

[10] *Id.* at 725.

[11] *Id.* at 724.  But the court does suggest that if an interpretation of an exclusion is so broad that it would render it implausible that anyone would purchase the policy, that is reason to doubt the interpretation.  *Id.*

juncture, plaintiff's argument establishes an admission that the term is ambiguous and, therefore, in need of interpretation; but we reject plaintiff's proposed interpretation.[12]

In reaching its conclusion that the definition of "contractor" and its inclusion of the phrase "any property owner" covers the injured party in this case, the trial court relied upon the principle of *ejusdem generis* and that the common connection between the terms in the contract is that they cover "persons or entities generally and reasonably found on a construction site . . . ." (Tr Ct opinion, p 10.)  There are problems, however, with this analysis.  First, the principle of *ejusdem generis* does not apply here because we are not called upon to interpret the meaning of a general term that falls at the end of a list of specific terms.  As explained in *Reading Law:  The Interpretation of Legal Texts,*[13] the general term must follow the specific terms (of which there must be two or more).  Thus, this rule of interpretation would only apply in this context to interpreting the last clause of the exclusion, the one which reads "any and all persons providing services or materials of any kind for these persons or entities mentioned herein."  While that is the clause which was at issue in *Paszko*, it is not at issue in this case.

The appropriate interpretative canon to employ here would be the associated-words canon, or *noscitur a sociis*.  This principle says that when several words "are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar.  The canon especially holds that 'words grouped in a list should be given related meanings.' "[14]  Undoubtedly, were the trial court to apply this rule of interpretation, it would have reached the same conclusion that the "related meanings" are those individuals or entities that are likely to be found on a construction site.  We disagree. Rather, we would conclude that the relationship between the categories listed in the exclusion are those who are being compensated, or who otherwise have a commercial interest,[15] for being on the job site.  Or, as the Connecticut court put it in *Turano,* the "language employed in the heading is not broad enough to encompass the situation of a customer/property owner. Accordingly, it should follow that everything that falls under this heading should reflect the employment situation."[16]  That is to say, the contractor, any subcontractors, or any vendors supplying materials or services, or who otherwise are involved from a commercial standpoint. This would lead to a very reasonable conclusion about the meaning and purpose of the clause:  to avoid the prospect that a commercial entity, that would (or at least should) have its own

---

[12] It should be noted that we are not suggesting that plaintiff could not write an exclusionary clause that excludes the property owner upon whose real property the insured is performing work.  Rather, we merely conclude that plaintiff has not done so with the clause before us.

[13] Scalia and Garner, *Reading Law:  The Interpretation of Legal Texts* (Thomson/West, 2012), pp 202-205,

[14] Scalia, *id.* at 195, quoting *Third Nat'l Bank in Nashville v Impact Ltd*, 432 US 312, 322 (1977).

[15] Such as the developer of a commercial project.

[16] *Turano, slip op* at 10-11.

commercial liability policy from tagging onto the one issued by plaintiff to a particular commercial customer. Indeed, Judge Posner addresses this very issue in *Paszko*.[17] Ultimately, it led to the court's conclusion that the "interpretation that services are not provided until the contractor . . . begins to do compensated work on the project" was as plausible as the interpretation that a "contractor" is anyone in the construction business regardless whether he was rendering a service at the time of injury.[18]

Similarly, we think an interpretation that "any property owner" refers to someone, or some entity, who is commercially involved in the work being done is at least as plausible, indeed more so, as the interpretation that a residential homeowner falls within the category of "contractor" merely because work is being done on the owner's property. Of course, this interpretation necessitates being able to identify potential members of the category of "any property owner," and which falls within the more general category of persons or entities that have a commercial involvement in the project that gives rise to the injury, in order to give that phrase meaning. But that is easily enough done. As defendant suggests, it could easily refer to owners of equipment used in the project. For example, if in this case the brushhog were rented rather than owned by defendant, then the injured party might have sued the rental company as well and the exclusion would operate to prevent the rental company from seeking coverage under the policy that plaintiff issued to defendant. Rather, the rental company could reasonably be expected to have its own commercial liability policy to provide a defense and indemnification in such a situation. Similarly, a "developer," who is also listed in the definition of "contractor" (and who may or may not also be the owner of the property upon which the work is being performed) would be expected to carry his own commercial liability insurance (and, for that matter, workers' compensation insurance for any employees).

Plaintiff suggests that defendant's argument amounts to asking this Court to interpret the policy based upon defendant's "reasonable expectations," a rule of interpretation that plaintiff argues our Supreme Court rejected in *Wilkie v Auto-Owners Ins Co*.[19] But plaintiff overreaches in its reliance on *Wilkie*. While it is true that *Wilkie* did hold "that the rule of reasonable expectations has no application in Michigan,"[20] to merely stop at that point tells only half the story. Rather, *Wilkie*[21] drew a distinction between ambiguous and unambiguous contracts, holding that the rule has no application to interpreting *unambiguous* contracts:

> The rule of reasonable expectations clearly has no application to unambiguous contracts. That is, one's alleged "reasonable expectations" cannot supersede the clear language of a contract. Therefore, if this rule has any

----

[17] See *Paszko*, 718 F3d at 724.

[18] *Id.* at 725.

[19] 469 Mich 41, 60-63; 664 NW2d 776 (2003).

[20] *Id.* at 63.

[21] *Id.* at 60.

meaning, it can only be that, if there is more than one way to reasonably interpret a contract, i.e., the contract is ambiguous, and one of these interpretations is in accord with the reasonable expectations of the insured, this interpretation should prevail. However, this is saying no more than that, if a contract is ambiguous and the parties' intent cannot be discerned from extrinsic evidence, the contract should be interpreted against the insurer. In other words, when its application is limited to ambiguous contracts, the rule of reasonable expectations is just a surrogate for the rule of construing against the drafter.

That is, in the context of interpreting ambiguous contracts, it is merely a different name for the *contra proferentem* doctrine.[22] Thus, *Wilkie* really is saying only that the rule of reasonable expectations serves no purpose. An unambiguous contract has no need of interpretation and, with ambiguous contracts, it is merely a different name for the *contra proferentem* doctrine. Having already concluded that the provision at issue here is ambiguous, this doctrine, under whichever name, leads us to conclude that it must be interpreted against plaintiff. That is, we believe that the better interpretation of "any property owner," given that it is included in a list that otherwise only includes those that have a commercial interest (or their employees), is that it does not include those without a commercial interest in the project, namely, in this case, the residential homeowner. Or, as Judge Posner ultimately reasoned in *Paszko*, when faced with two plausible interpretations, we must select the one that favors the insured and, therefore, the interpretation that excludes a residential homeowner from the definition of "contractor" "thus rules the case."[23]

Reversed and remanded to the trial court for entry of summary disposition in favor of defendant. We do not retain jurisdiction. Defendant may tax costs.

/s/ David H. Sawyer
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly

---

[22] *Id.* at 61.

[23] *Paszko*, 718 F3d at 725.