NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0216n.06

No. 23-1794

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 23, 2025
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| CITIZENS INSURANCE COMPANY OF THE MIDWEST, | ) ) ) |
|     Plaintiff-Appellant, | ) ) |
| v. | ) ) ) |
| SAMUEL GENE MCNEELEY; SUSAN HENDRIX, | ) ) ) |
|     Defendants-Appellees. | ) ) |

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

OPINION

---

Before: SUTTON, Chief Judge; GRIFFIN and MATHIS, Circuit Judges.

GRIFFIN, Circuit Judge.

In this insurance dispute, plaintiff Citizens Insurance Company of the Midwest seeks reimbursement from defendant Dr. Samuel McNeeley for alleged overpayment of underinsured-motorist benefits. Citizens seeks a declaration that, under its policy terms, it overpaid on McNeeley's claim and was entitled to reimbursement in the amount paid by McNeeley's other insurer, non-party Allstate Insurance Company. The district court dismissed Citizens' declaratory-judgment action, concluding that Citizens did not overpay. We affirm.

I.

In 2017, McNeeley was walking across a street when Sergui Cascaval struck McNeeley with his car. McNeeley's injuries were serious and ended his career as a physician.

Three insurance policies covered McNeeley's bodily injury losses. Cascaval carried an auto policy from State Farm Fire and Casualty Company, with a limit of $25,000 for bodily injury. McNeeley carried two auto policies with underinsured-motorist coverage: one through Citizens, with a limit of $1,000,000; and another through Allstate, with a limit of $500,000.

All three insurers eventually paid McNeeley. First, McNeeley, with Citizens' permission, accepted State Farm's policy-limit payment of $25,000, as Cascaval was at fault. Next, Citizens paid McNeeley $975,000 for his underinsured-motorist benefit—the $1,000,000 limit less the $25,000 paid by State Farm. And finally, Allstate paid McNeeley $500,000 for his underinsured-motorist benefit.

Citizens later sued McNeeley, seeking a declaratory judgment that it was entitled to reimbursement of the $500,000 underinsured-motorist benefit McNeeley received from Allstate. The district court entered summary judgment in McNeeley's favor, holding that because "Citizens did not overpay under its policy, it is not entitled to any reimbursement." This appeal followed.

## II.

We review de novo a summary-judgment grant on a declaratory-judgment claim. *Stryker Corp. v. Nat'l Union Fire Ins. of Pittsburgh*, 681 F.3d 819, 823 (6th Cir. 2012). In federal diversity actions, like this one, state law governs substantive issues. *Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2002). The parties agree, so we may assume, that Michigan law applies here. *See Olenik v. Ohio Cas. Ins.*, 114 F.4th 821, 825 (6th Cir. 2024). If Michigan law is unclear on a substantive issue, we make an "*Erie* guess" and predict how the Michigan Supreme Court would rule on the issue. *Combs v. Int'l Ins.*, 354 F.3d 568, 577 (6th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). When doing so, we "consider all relevant data, including jurisprudence from other jurisdictions." *Id.* (internal quotation marks omitted).

Under Michigan law, "[t]he proper interpretation of a contract is a question of law," which Michigan courts review de novo. *Wilkie v. Auto-Owners Ins.*, 664 N.W.2d 776, 780 (Mich. 2003). Michigan courts interpret insurance contracts "the same as any other contract." *Auto-Owners Ins. v. Churchman*, 489 N.W.2d 431, 433 (Mich. 1992). That is, they "look at the contract as a whole and give meaning to all terms," *id.* at 434, in order to "honor the intent of the parties," *Klapp v. United Ins.*, 663 N.W.2d 447, 456 (Mich. 2003) (quoting *Rasheed v. Chrysler Corp.*, 517 N.W.2d 19, 29 n.28 (Mich. 1994)). And they construe ambiguous language "against the drafter, i.e., the insurer." *Wilkie*, 664 N.W.2d at 787.

### A.

Citizens asserts that, under its policy, it is entitled to recover the $500,000 that Allstate paid McNeeley. At the heart of Citizens' reimbursement claim is its other-insurance clause.

Other-insurance clauses are "provisions inserted in insurance policies to vary or limit the insurer's liability when additional insurance coverage can be established to cover the same loss." *St. Paul Fire & Marine Ins. v. Am. Home Assur. Co.*, 514 N.W.2d 113, 115 (Mich. 1994). When several policies cover the same loss and there is a question about which insurance policy takes priority over another, courts compare the respective policies' other-insurance clauses and categorize them based on the language used. *See, e.g.*, *id.* at 115–16; *see also* 15A Jordan R. Plitt, et al., Couch on Insurance § 219:44 (3d ed. 2024). The categories include: (1) pro-rata clauses, which limit the insurer's liability to "a proportionate percentage of all insurance covering the event"; and (2) excess clauses, which limit the insurer's liability to "the amount of loss in excess of the coverage provided by the other insurance." *St. Paul*, 514 N.W.2d at 115; *see also* 15A Couch on Insurance § 219:5. In cases involving the order of priority between policies with those types of clauses, Michigan has a straightforward rule: a policy with a pro-rata clause must pay up

to its policy limit before the policy with the excess clause must pay anything. *St. Paul*, 514 N.W.2d at 119–21. In other words, relative to each other, a pro-rata policy is primary, and an excess policy is secondary. *Id.*

B.

With that background in mind, consider the other-insurance clauses at issue here. We start with Allstate's relatively simple one:

> **If There Is Other Insurance**
> 1. **When limits of two or more insured autos may be stacked:**
>> If the injured person was struck as a pedestrian . . . this coverage will be excess.

The parties do not dispute that this other-insurance clause is an excess clause. Under the Allstate policy's plain terms, as applied to the facts here—where McNeeley was "struck as a pedestrian"—Allstate's coverage is excess. Thus, under Michigan law, Allstate becomes liable for a loss only after the primary coverages are exhausted. *Id.* at 120–21.

Next, consider Citizens' other-insurance clause, which provides:

> **OTHER INSURANCE**
> If there is other applicable insurance available under more than one policy or provision of coverage that is similar to the insurance provided under this Part of the policy:
>> **1.** Any recovery for damages for "bodily injury" sustained by an "insured" may equal but not exceed the higher of the applicable limit for any one vehicle under this insurance or any other insurance.
>>
>> **2.** Any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any collectible insurance providing such coverage on a primary basis.
>>
>> **3.** The following priorities of recovery apply:

| **First** | The Uninsured/Underinsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the accident. |
|---|---|
| **Second** | Any other policy affording Uninsured/Underinsured Motorists Coverage to the "insured" as a named insured or family member. |

**4.** We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all limits applicable on the same level of priority.

According to the prefatory paragraph, this clause generally applies here because "there is other applicable insurance available" (the Allstate underinsured-motorist coverage) "that is similar to the insurance provided under this Part of the [Citizens] policy." And the fourth paragraph makes clear that Citizens' other-insurance clause is a pro-rata clause. It defines the formula to determine Citizens' "share of the loss" based on "the proportion" of its limit of liability on "the total of all limits applicable on the same level of priority." In other words, it "purports to limit the insurer's liability to a proportionate percentage of all insurance covering the event." *Id.* at 115.

Under the *St. Paul* rule discussed above, Citizens' pro-rata policy is primary relative to Allstate's excess policy. Thus, Citizens needed to exhaust its policy limit before Allstate had to pay anything, and Allstate's later excess payment did not reduce Citizens' primary responsibility. *See id.* at 119–21.

C.

Citizens resists this conclusion by pointing to other paragraphs in its other-insurance clause, but its arguments are unpersuasive.

1.

For instance, Citizens argues that the second paragraph renders its insurance "excess" because McNeeley was hit by "a vehicle [he did] not own." We reject that interpretation for two reasons.

First, Citizens' interpretation ignores the inclusive phrase immediately following "a vehicle you do not own"—"including any vehicle while used as a temporary substitute for 'your covered auto.'" Under "the associated-words canon, or *noscitur a sociis*," a term's meaning must align with surrounding words in context. *Atl. Cas. Ins. v. Gustafson*, 891 N.W.2d 499, 503 (Mich. Ct. App. 2016). And here, the inclusive phrase suggests that "a vehicle you do not own" refers to the vehicle that "you" (the insured) were driving at the time of the loss because it includes a vehicle that "you" might have driven temporarily as a "substitute for your covered auto."

Second, Citizens' interpretation contravenes the very purpose of underinsured-motorist coverage. Underinsured-motorist coverage applies almost exclusively in situations where the at-fault motorist was driving a vehicle the insured does not own. *See Wilkie*, 664 N.W.2d at 778 (explaining that underinsured-motorist coverage is meant to "supplement insurance proceeds received by the insured from the tortfeasor had the tortfeasor not been underinsured"). Under Citizens' interpretation, paragraph two would almost always be triggered, so Citizens' underinsured-motorist insurance would almost always be excess—save for highly unusual circumstances like when an underinsured person hurts the insured while driving the insured's vehicle. We doubt such an interpretation is reasonable, but even if it were, it would yield to McNeeley's alternative reasonable interpretation because we construe ambiguity in the insured's favor. *See id.* at 787; *Klapp*, 663 N.W.2d at 454. Because McNeeley was not driving a vehicle he

did not own at the time of the loss—indeed, as a pedestrian, he was not driving any vehicle at all—paragraph two does not apply, and Citizens' policy is not excess.

2.

Next, Citizens points to the third paragraph and corresponding "priorities of recovery" table, arguing that both Citizens and Allstate occupy the same tier of priority. True, both Citizens and Allstate occupy the table's second tier because they are both "[a]ny other policy affording Uninsured/Underinsured Motorists Coverage to the 'insured' as a named insured." But that fact begs the question whether either policy, relative to each other, is primary or excess under *St. Paul*. As explained above, while Allstate's policy is excess by its plain terms, Citizens' paragraph four suggests it is pro rata. The priority table does not change that conclusion.

Indeed, to hold otherwise would render paragraph two surplusage, an interpretation we must avoid. *See Klapp*, 663 N.W.2d at 453. As just discussed, the second paragraph makes Citizens "excess" if the insured is injured in a vehicle he does not own. But under the third paragraph, whenever the insured is injured in a vehicle he does not own, the Citizens policy would necessarily be in the second tier of the "priorities of recovery" table. If that table alone determined whether an insurer is primary or excess, then paragraph two would serve no purpose. At bottom, the table does not tell us how to apportion liability when several policies fall within the same tier, and it does not conflict with the conclusion that paragraph four makes Citizens' policy primary relative to Allstate's policy.

3.

Finally, Citizens argues that the first paragraph prohibits McNeeley from "stacking" the limits for both the Citizens and Allstate policies. The concept of stacking coverages "arises when the same claimant and the same loss are covered under multiple policies . . . and the amount

-7-

available under one policy is inadequate to satisfy the damages alleged or awarded." 12 Couch on Insurance § 169:4. Citizens asserts that, because its policy has a higher limit than Allstate's ($1 million, as opposed to $500,000), McNeeley may recover a total of only $1 million—he may not stack the two limits to recover a total of $1.5 million. After subtracting the $25,000 McNeeley received from State Farm, Citizens contends that McNeeley may recoup no more than $975,000 from Citizens and Allstate combined.

But Citizens' anti-stacking provision is "irreconcilable" with Allstate's other-insurance clause. *See St. Paul*, 514 N.W.2d at 118. Recall that Allstate's clause explicitly allows coverage to be "stacked" in this exact factual situation—when "the injured person was struck as a pedestrian." There is no way to "give the language of each policy its intended effect" when one policy calls for stacking and the other forbids it. *Id.* at 115 n.13. *St. Paul* explains that if clauses are "irreconcilable" then we must "disregard the contractual language and impose a pro-rata share of the loss upon each insurance company." *Id.* at 118; *see also id.* at 120–21. Here, it is undisputed that McNeeley's losses from his injuries exceeded the collective $1.5 million he recovered from all three insurers. Thus, *St. Paul*'s demand for pro-rata apportionment of the loss has been satisfied because each insurer paid up to its own limit: Citizens paid its limit of $1,000,000 (less the $25,000 recovered from State Farm) and Allstate paid its limit of $500,000.

*Berkeypile v. Westfield Insurance Co.*, 779 N.W.2d 793 (Mich. 2010) (order), which applied an anti-stacking provision to limit an insured's recovery, is not to the contrary. That case involved an insured seeking to stack her own underinsured-motorist coverage on top of recoveries from several tortfeasors' policies. *Id.* at 793–94. It is inapposite here, where an insured seeks to stack recoveries from two of his own auto policies with opposing stacking language.

And while *St. Paul* did not address the reconcilability of stacking provisions within other-insurance clauses, we are confident that the Michigan Supreme Court would hold these provisions irreconcilable and not enforce Citizens' anti-stacking provision, particularly when such enforcement would deprive McNeeley of the benefit of his two auto policies while granting Citizens a windfall. In the absence of on-point Michigan authority, we consider "all relevant data," including cases from other jurisdictions, *Combs*, 354 F.3d at 577, and legal treatises, *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985). And those authorities confirm that "[w]hen insureds pay premiums on more than one policy of insurance for uninsured motorist coverage, . . . they may recover from each carrier up to the total proceeds that the tortfeasor was liable to pay." *See* 12 Couch on Insurance § 169:67 & n.1 (collecting cases).

Indeed, Citizens' theory of how its anti-stacking provision applies runs counter to the entire purpose of other-insurance clauses, which "is to prevent one company from paying disproportionately on a loss shared with another company, not to reduce the cumulative coverage available to the insured." *See* Allan D. Windt, 2 Insurance Claims & Disputes § 6:11 & n.11 (6th ed. 2024) (noting that, in some cases, "clauses intended to prevent the insured from stacking benefits in order to cover the entire loss may be ignored"). Under Citizens' theory, McNeeley may recover only $1 million—as if he had not been insured by Allstate at all. Citizens does not argue, nor does any record evidence suggest, that Citizens added the anti-stacking provision to McNeeley's policy (and reduced his premiums accordingly) because he carried other underinsured-motorist coverage. Rather, Citizens apparently seeks to benefit from McNeeley's additional coverage through another insurer. Against such a factual backdrop, Citizens' anti-stacking provision does not entitle it to reimbursement.

D.

Thus, Citizens did not overpay, and it is not entitled to reimbursement. Because we affirm on this ground, we do not reach McNeeley's alternative arguments about unclean hands, estoppel, and related doctrines.

III.

For these reasons, we affirm the district court's judgment.