# STATE OF MICHIGAN

# COURT OF APPEALS

DEONTA JACKSON-JAMES,

Plaintiff-Appellant,

v

REDFORD UNION HIGH SCHOOL, REDFORD
UNION SCHOOL DISTRICT, CHUCK
MARTIN, MIKE HUMITZ, MIKE TAYLOR,
SICO NORTH AMERICA, INC., and
PROFESSIONAL EDUCATIONAL SERVICES
GROUP, LLC,

Defendants,

and

GRAND RAPIDS BUILDING SERVICES, INC.,
doing business as GRBS,

Defendant-Appellee.

UNPUBLISHED
October 11, 2018

No. 337569
Wayne Circuit Court
LC No. 13-012601-NO

Before: JANSEN, P.J., and METER and STEPHENS, JJ..

PER CURIAM.

Plaintiff was injured when he sat on a defective cafeteria stool while attending a summer lunch program at defendant Redford Union High School (Redford). In addition to several claims against the other defendants, plaintiff brought a negligence claim against defendant Grand River Building Services, Inc. (GRBS), which supplied custodial and maintenance employees to Redford Union School District (the District) at the time of the incident. Eventually, the trial court dismissed all of plaintiff's claims. Plaintiff appeals as of right, challenging only the trial court's order granting GRBS's motion for summary disposition under MCR 2.116(C)(8) (failure to state a claim on which relief can be granted) and (10) (no genuine issue of material fact). We affirm.

In July 2013, plaintiff attended a summer lunch program at Redford. Plaintiff selected a table and seat in the cafeteria. When plaintiff took his seat, he suffered injuries from a metal pole protruding upward from the seat. Brandi Lee, an employee of GRBS who worked in the

Redford cafeteria during the summer of 2013, subsequently replaced all of the broken seats in the cafeteria, including the one that caused plaintiff's injury.

Plaintiff initially filed a complaint against Redford only, alleging negligence and gross negligence and requesting money damages. Over time, plaintiff added several more parties as defendants to this action, including GRBS. In plaintiff's fourth and final amended complaint, plaintiff asserted the following allegations of negligence against GRBS:[1]

22. At all times, the Defendants, owed Plaintiff a duty to maintain the premises and fixture in a reasonably safe condition, to exercise ordinary care to protect Plaintiff from unreasonable risks of injury that were known or should have been known by Defendants, to warn Plaintiff of any and all dangerous conditions existing on Defendant's property, and to inspect and discover possible dangerous conditions.

23. Defendants knew and/or should have known that the fixture was dangerous.

24. Defendants breached their duties to Plaintiff in numerous ways, including but not limited to the following:

a. Failing to correct the dangerous defect in their fixture;

b. Failing to warn its invitees and/or business Visitors of the dangers associated with the defective fixture;

c. Failure to take other corrective measures;

d. Failing to maintain the premises in a reasonably safe condition;

e. Failing to inspect fixture for hazards, dangers, and improper conditions;

f. Failing to repair fixture to correct hazards, dangers, and improper conditions;

g. Failing to maintain fixture provided specifically for use by the public in a safe condition;

h. All other breaches to be discovered.

---

[1] All other defendants except SICO North America, Inc., were named with respect to these allegations. These were plaintiff's only claims against GRBS.

25. As a direct and proximate result of Defendants' negligence as described above, Plaintiff has suffered and will continue to suffer damages . . . .

GRBS filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10), arguing that GRBS was not liable for plaintiff's injuries because (1) GRBS did not owe plaintiff a duty sufficient to sustain plaintiff's negligence claim against GRBS, (2) GRBS was not in possession of the premises and did not have control over the premises at the time of the incident, and (3) GRBS did not create the condition that resulted in plaintiff's injuries. The trial court entered an order granting GRBS's motion, concluding that there was no evidence presented in support of plaintiff's contention that GRBS owed him a duty under the contract between GRBS and Redford, which did not require GRBS to provide maintenance for the cafeteria during the summer months. The trial court further found that there was no evidence presented regarding when the defective seat actually became defective. The trial court also found that plaintiff was not entitled to relief on a premises-liability theory because GRBS did not have control or possession of the premises at the time of plaintiff's injury and because GRBS did not create the hazardous condition that led to the injury.

Plaintiff argues that the trial court erred by granting summary disposition to GRBS. We disagree.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). Motions under MCR 2.116(C)(8) test the legal sufficiency of the complaint. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. (citations and quotation marks omitted). When considering motions under subrule (C)(8), a court only examines the pleadings. MCR 2.116(G)(5).

Under MCR 2.116(C)(10), summary disposition can be granted if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." Motions for summary disposition under MCR 2.116(C)(10) test the factual sufficiency of the complaint. *Maiden*, 461 Mich at 120. "A question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence." *Dextrom*, 287 Mich App at 416. When evaluating motions brought under this subrule, a trial court must consider—in the light most favorable to the nonmoving party—the parties' affidavits, pleadings, depositions, admissions, and other documentary evidence. *Id*. at 415; see also MCR 2.116(G)(5). The nonmoving party may not rest upon its pleading, but must set forth specific facts showing that there is a genuine issue for trial. MCR 2.116(G)(4). If the nonmoving party fails to do so, the moving party is entitled to judgment as a matter of law. *Maiden*, 461 Mich at 120.

To establish a prima facie case of negligence, a plaintiff must prove that "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the

plaintiff's damages." *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011).

In *Fultz v Union-Commerce Assoc*, 470 Mich 460, 465-467; 683 NW2d 587 (2004), the Michigan Supreme Court departed from established precedent distinguishing tort actions on the basis of whether they were made pursuant to contractual misfeasance or nonfeasance. The Court recognized the rule that actions in tort cannot arise "when based solely on the nonperformance of a contractual duty." *Id*. at 466. However, the Court went on to explain that the "misfeasance or nonfeasance" dichotomy obscured the proper inquiry: whether a defendant owes a plaintiff any duty at all. *Id*. at 467. The Court held that

> the lower courts should analyze tort actions based on a contract and brought by a plaintiff who is not a party to that contract by using a "separate and distinct" mode of analysis. Specifically, the threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on a contract will lie.

> \* \* \*

> [I]f defendant fails or refuses to perform a promise, the action is in contract. If defendant negligently performs a contractual duty or breaches a duty arising by implication from the relation of the parties created by the contract, the action may be either in contract or in tort. In such cases, however, no tort liability arises for failing to fulfill a promise in the absence of a duty to act that is separate and distinct from the promise made. [*Id*. at 467, 469-470.]

In *Loweke*, 489 Mich at 168, the Michigan Supreme Court recognized that, in the wake of *Fultz*, a pattern of misapplication had emerged in which courts had interpreted the *Fultz* holding as a complete bar against negligence claims raised by third parties alleging hazards that were the subject of a defendant's contractual obligations with another. In other words, courts "misconstrued *Fultz*'s test requiring a 'separate and distinct duty' by erroneously focusing on whether a defendant's *conduct* was separate and distinct from the obligations required by the contract or whether the *hazard* was a subject of or contemplated by the contract." *Id*. (emphasis added). What *Fultz* actually requires is an inquiry regarding whether a defendant owes a plaintiff a *duty*—i.e. "whether . . . 'a defendant is under *any* legal obligation to act for the benefit of the plaintiff' "—that was not created solely by the terms of the contract. *Id*., quoting *Valcaniant v Detroit Edison Co*, 470 Mich 82, 86 n 4; 679 NW2d 689 (2004). In clarification of the *Fultz* decision, the *Loweke* Court held that "a separate and distinct duty to support a cause of action in tort can arise by statute, or by a number of preexisting tort principles, including duties imposed because of a special relationship between the parties, and the generally recognized common-law duty to use due care in undertakings." *Loweke*, 489 Mich at 170 (citations omitted). The existence of a contract does not vitiate the preexisting obligation to avoid doing harm to another when one acts. *Id*. "*Fultz*'s directive is to determine whether a defendant owes a noncontracting, third-party plaintiff a legal duty apart from the defendant's contractual obligations to another." *Id*. at 169.

-4-

Under the terms of the contract, GRBS employees were required to wash all furniture during summer breaks, but the contract explicitly indicated that this obligation did not apply to tables and chairs except during the school year. Therefore, as an initial matter, GRBS employees were not contractually required to clean the cafeteria tables or the attached seats during the summer of 2013. However, the contract further provided for an unidentified and undefined "contractual manager," who was required to "report potentially hazardous conditions and items in need of repair including office lighting, emergency and exit lights, plumbing, and water cooler problems, etc., to the Operations office." Because this language appears to provide only a nonexhaustive list of hazardous conditions that must be reported, it could be interpreted to extend to items such as cafeteria seats. Nevertheless, as previously discussed, a contracting party's failure to perform a contractual promise does not constitute grounds for a third-party tort claim. See *Fultz*, 470 Mich at 469.

Subsection 3.07.2 of the contract made GRBS "responsible for advising the District of the need for . . . all necessary repairs and replacements to the District's facilities and equipment . . . ." The contract also stated that GRBS "may be required to purchase[, for cost,] any usable inventory of custodial supplies and maintenance/grounds supplies that may be on hand at the commencement of operations under an award Contract." The last provision of any possible relevance required GRBS to "furnish all equipment: such as floor machines, vacuum systems and all other equipment." The contract does not specifically define "equipment" and "supplies." However, under the doctrine of *ejusdem generis*, which allows a court to use a list of two or more specific terms to aid in defining a general term that falls at the end of the list, see *Atlantic Cas Ins Co v Gustafson*, 315 Mich App 533, 540-541; 891 NW2d 499 (2016), it appears that "equipment" is meant to refer to manually operated machines used for cleaning and performing maintenance tasks, and not to furniture such as cafeteria seats. Moreover, the equipment inventory attached to the contract did not include the cafeteria tables or the adjoining seats among its listed items. Likewise, it appears that "supplies" was meant to refer to materials such as paper towels and cleaning solutions used to conduct custodial tasks, or to materials used to maintain grounds, and not to furniture of any kind. Regardless, even if the parties did intend for these provisions to apply to cafeteria seats, and even taking into account Subsection 3.07.2, any failure of GRBS employees to advise the District of the need for repairs to the seats would, once again, be insufficient to establish tort liability to plaintiff. See *Fultz*, 470 Mich at 469.

Plaintiff cites the deposition testimony of Jon Barth (who oversaw custodial and maintenance operations for the District) and Gregory McIntyre (the assistant superintendent of business services for the District), arguing that their testimony established that GRBS employees were required to *inspect* the chairs in the cafeteria and to conduct the appropriate repairs if defects were discovered. However, under the specifically-worded written contract between GRBS and the District, GRBS employees were not required to take such actions. As such, the trial court, in exercising its role of determining the existence of a duty, see *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 95; 485 NW2d 676 (1992), did not err by declining to rely on this deposition testimony to find a duty for purposes of a tort claim. Plaintiff is correct that *if* GRBS employees were engaged in an undertaking, they were required to exercise ordinary care. See *Loweke*, 489 Mich at 170-171. However, plaintiff has failed to present any evidence that a GRBS employee performed any action—even routine cleaning—on the cafeteria seats. The witness testimony established, at most, that GRBS employees cleaned only the surfaces of the

cafeteria tables and the floors. It is true that Lee eventually replaced at least 10 of the cafeteria seats. However, this did not occur until the beginning of the 2013 school year, sometime after plaintiff had already sustained his injuries. Because GRBS employees did not perform any maintenance or exercise any influence over the cafeteria seats, they owed plaintiff no duty of ordinary care under the common law. See *id*. The trial court did not err when it determined that GRBS was entitled to summary disposition.[2]

Affirmed.

/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Cynthia Diane Stephens

---

[2] GRBS also asserts that plaintiff cannot prevail under a theory of premises liability. We need not address this assertion, however, because plaintiff has expressly conceded on appeal that he does not contest the trial court's determination that he could not sue GRBS under a theory of premises liability.